## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                          No. CR 05-189 JB

DAVID GARCIA,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Sentencing Memorandum on Behalf of Defendant David Garcia, filed May 5, 2006 (Doc. 36)("Sentencing Memorandum"). The Court held a sentencing hearing on May 19, 2006. The primary issues are: (i) whether a criminal history category of II over-represents Garcia's criminal history, and (ii) whether the circumstances of Garcia's case justify a downward deviation from the United States Sentencing Guidelines under United States v. Booker. The Court finds that a criminal history category of II over-represents Garcia's criminal history, and will therefore vary from the Guidelines and assign a criminal history category of I. Because the Court does not believe that the circumstances of Garcia's case otherwise justify a sentence outside of the Guidelines, and that the adjustment in criminal history category results in a fair and appropriate sentence for Garcia, the Court will not award a downward departure or other deviation.

## FACTUAL BACKGROUND

The Court has carefully considered Garcia's background. While Garcia's personal history certainly contains more than its share of life's woes, it is not significantly different than most of

those that come before the Court.  The only factor that appears to deserve close scrutiny is his relatively short criminal history.

1. **Personal History**.

Garcia was born on January 15, 1980 in Albuquerque, New Mexico.  He is twenty-six years old and engaged to be married to Crissy Bencomo, age 24, the mother of his two and one-half year old son, Cruzito Vicente Garcia.

Garcia completed the eleventh grade at Del Norte High School before dropping out.  He is currently studying for his General Equivalency Diploma.

Garcia enjoyed excellent relationships with both his parents as he was growing up.  On August 16, 2004, Garcia's mother died of complications after suffering a heart attack.  Garcia continues to have a good relationship with his father.  Garcia has a maternal half-sister, Katie Addison, who resides in the State of Wisconsin.

After his mother died, Garcia assumed responsibility for the care of his maternal grandfather, Harold Mulberry, a seventy-four year old man who is in very poor health, is wheelchair bound with cognitive impairment from a stroke, and is in need of constant supervision.  Mulberry is a retired railroad worker who sustained numerous injuries over the course of his career.  Mulberry's treating physician, William J. Chestnut, M.D., an orthopedic surgeon, has diagnosed Mulberry with degenerative arthritis of the left hip; with degenerative arthritis of the LS spine; with significant cognitive impairment; and with Ataxia, requiring him to use a wheelchair for life.

Dr. Chestnut indicates that no improvement is possible and that Mulberry's condition is permanent.  Mulberry requires epidural injections of hydrocodone for the sharp and consistent pain in his hips.  Mulberry is in constant danger of injury by falls, and he is unable to stand or walk

without significant pain in his hips, back, and legs.  Only bed-rest decreases the pain.  Garcia has submitted Mulberry's medical records from Dr. Chestnut.

Mulberry lost his wife several years ago.  In August 2004, Mulberry's daughter died, and three months ago, Mulberry lost a brother.  Mulberry has a sister who lives in Albuquerque who is also elderly, is in poor health, and was recently hospitalized.  Garcia is the closest living relative who is able to care for Mulberry.

After work each day, Garcia goes to his grandfather's house, cares for him until approximately 10:00 p.m. each evening, and then goes to the home of his aunt and uncle, John and Anna Pearson, where he sleeps.  Bencomo and his son live at Mulberry's house so that she can care for Mulberry at night and while Garcia is at work.  On the weekends, Garcia returns to his grandfather's home to provide care.

**2. 2002 Traffic Citations.**

On March 29, 2002, Garcia received traffic citations for no proof of registration, no proof of financial responsibility, and expired license plates.  Garcia failed to appear in court as directed by the officer, and  a bench warrant was issued.  On March 2, 2005, after being in custody stemming from a December 18, 2004 arrest related to a domestic disturbance incident, Garcia appeared in Metropolitan Court and plead guilty to the citations.  Garcia was sentenced to 30 days in custody with 30 days credit for time served.

**3. State Charges.**

On December 18, 2004, Albuquerque Police Officers responded to a domestic disturbance call at Garcia's house.  When the officers arrived, they conducted their investigation and placed Garcia under arrest for certain charges relating to the domestic disturbance.  Garcia was also charged

with resisting arrest and possession of less than one ounce of marijuana.  A criminal complaint was filed.

While at Garcia's home, Albuquerque Police Officers called agents from the Bureau of Alcohol, Tobacco, and Firearms to the scene.  Garcia informed the agents that he had three firearms in the residence.  The agents then obtained a search warrant and seized a Cobray S/S 12-gauge shotgun and a Glock, model 22 semiautomatic pistol.

The shotgun was later determined to be a destructive device that was not registered to Garcia in the National Firearms Registration and Transfer Record.  The Glock was determined to have been stolen.  There has been no allegation, however, that either firearm was used in any unlawful manner.

## PROCEDURAL BACKGROUND

The Pre-Sentence Report ("PSR") calculates Garcia's offense level at seventeen with a criminal history category of II.  That results in an incarceration range of twenty-seven to thirty-three months.  Garcia seeks probation.

### 1.  Pre-trial Release.

On December 20, 2004, a criminal complaint was filed in federal court charging Garcia with possession of an unregistered firearm and possession of a stolen firearm.  On January 4, 2005, Garcia was indicted on the state charges.  On January 25, 2005, a federal grand jury indicted Garcia for possession of an unregistered firearm and for possession of a stolen firearm.  See Sealed Indictment, filed January 25, 2005 (Doc. 2).

A warrant was issued on January 26, 2005, and a federal detainer was placed on him at the Metropolitan Detention Center.  On February 7, 2005, Mr. Kenneth H. Martinez entered his appearance on Garcia's behalf in the federal case.  See Entry of Appearance, filed February 7, 2005

-4-

(Doc. 4).  On July 26, 2005, Garcia made his first appearance before the Honorable Lorenzo F.

Garcia, United States Magistrate Judge, and entered a plea of guilty to Count 1 of the indictment.

On July 27, 2005, Judge Garcia entered a Conditional Order of Release authorizing Garcia

to be released under certain conditions to the third-party custody of Captain John Pearson.  See

Conditional Order of Release, filed July 27, 2005 (Doc. 11).  In his Order, Judge Garcia found:

> Capt. Pearson has a long and distinguished history with the New Mexico State
> Police, and retired as a captain after twenty-two years of service.  He is presently
> working for a private security company providing security services as a CSO to
> federal court officers and federal protectees, including courts within the Tenth Circuit
> and the District of New Mexico.

Id. ¶ 8, at 2.  On August 12, 2005, this Court affirmed the July 27, 2005 Conditional Order of

Release and, after 240 days in state and federal custody, Garcia was released to Pearson's custody.

### 2.  Work Since Pre-Trial Release.

Five days after his release from custody, Plumb Mechanical hired Garcia as a plumber's

helper.  He earned $8.00 per hour.  After one week, Garcia was promoted to foreman's helper.

After three months, he was promoted to a service technician and was given his own truck.

Six weeks later, Garcia was given a one-hundred percent raise and presently makes $16.00 per hour.

Garcia works about 60 hours per week for a company that employs approximately 250 people and

does most of the plumbing work for seven large homebuilders building houses on the west side of

Albuquerque.

### 3.  Acceptance of Responsibility.

Garcia pled guilty to possession of an unregistered firearm.  See 26 U.S.C. § 5841; 26 U.S.C.

§ 5861(d); 26 U.S.C. § 5871.  Garcia has fully accepted responsibility for his conduct and has

modified his behavior.  The Court has reviewed with care the letters that his friends and associates

have submitted and Garcia's handwritten Allocution Statement, filed May 3, 2006 (Doc. 35).  In addition, Garcia has fully complied with all requirements that his Pre-Trial Services Officer has set.

**4.  PSR.**

The base offense level is eighteen pursuant to U.S.S.G. § 2K1.2(a)(5).  Pursuant to U.S.S.G. § 2K2.1(b)(3)(B), the offense level is increased by two levels because Garcia's offense involved a firearm categorized as a destructive device under 26 U.S.C. § 5845(f).  Garcia, having demonstrated an acceptance of responsibility for the offense, is entitled to a three-level reduction in the offense level pursuant to U.S.S.G. § 3E1.1 if the United States so moves.  The United States has moved for a three level reduction.  After adjustments, the total offense level is seventeen.

The PSR reveals a total of two criminal history points, thereby establishing a criminal history category of II.  An offense level of seventeen, combined with a criminal history category II, results in a Guideline imprisonment range of twenty-seven to thirty-three months.

Pursuant to 18 U.S.C. § 3561, Garcia's offense is a Class C felony. Garcia is eligible for probation.  The Court has discretion to impose a fine or community service.  The authorized probation term for the offense is not less than one year, and no more than five years.  See 18 U.S.C. § 3561(c)(1).

Garcia requests that the Court sentence him to probation.  In support of his request, Garcia has filed a sentencing memorandum setting forth factors Garcia requests the Court consider in determining what sentence and length of sentence is sufficient, but not greater than necessary to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).  See Sentencing Memorandum at 2-5.

## POST-BOOKER SENTENCING

Garcia seeks to reduce his sentence in three ways.  First, Garcia argues that his criminal history category significantly over-represents the pervasiveness of his criminal history and the likelihood that he will commit further crimes.  Second, he seeks a departure pursuant to U.S.S.G. § 5K2.23.  Third, he seeks a variance from the Guidelines.

### 1.  **Guideline Sentence**.

U.S.S.G. § 4A1.3(b)(1) recognizes that, after a criminal history computation pursuant to U.S.S.G. §§ 4A1.1 and 4A1.2, the Court may conclude that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes and, therefore, authorizes a variance from the Guidelines.

### 2.  **United States v. Booker**.

In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court of the United States held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  542 U.S. at 301 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).  Six months after the decision in Blakely v. Washington, the Supreme Court extended its ruling and held that, under the Sixth Amendment, the standard applied to state sentencing statutes in Blakely v. Washington applies to the United States Sentencing Guidelines.  See United States v. Booker, 543 U.S. 220, 235 (2005)(finding "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Supreme Court).  Accordingly, the Supreme Court  reaffirmed its earlier holdings and concluded that "[a]ny fact (other than a prior conviction) which is necessary

to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 244.

Consistent with this conclusion, the Supreme Court in United States v. Booker found those provisions of the Federal Sentencing Reform Act of 1984 that made the Guidelines mandatory, see 18 U.S.C. § 3553(b)(1), or which rely upon the Guidelines' mandatory nature, see 18 U.S.C. § 3742(e), incompatible with the Sixth Amendment.  See United States v. Booker, 543 U.S. at 245. Accordingly, the Supreme Court in United States v. Booker severed and excised 18 U.S.C. § 3553(b)(1)– the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guideline range– from the remainder of the Act, thus "mak[ing] the Guidelines effectively advisory." Id.  The Supreme Court's holding in United States v. Booker "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well."  Id. at 245-46.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the

provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines,  (ii) the nature of the offense and the defendant's character; (iii) the types of available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. 3553(a)(1), (3)-(7).

Accordingly, both United States v. Booker and 18 U.S.C. § 3553(a) make it clear that courts should no longer blindly apply the Guidelines as if they are mandatory.  Nevertheless, the United States Court of Appeals for the Tenth Circuit has clarified that while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." Id. (internal quotations omitted).  See United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006)(holding that sentences within the Guidelines' range will be presumed reasonable).  In summation, a sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them; the Guidelines remain a highly significant factor in the court's analysis and sentences that fall within the Guidelines' range are presumably reasonable.

## ANALYSIS

Garcia submits a number of factors that the Court must consider when determining what

sentence and length of sentence are sufficient, but not greater than necessary, to satisfy the purposes of sentencing.  The Court has carefully considered these factors.  While the Court is persuaded that a criminal history category II over-represents Garcia's criminal history category, the Court is not convinced it should otherwise deviate or depart from the Guidelines sentence.

I.      **OVER-REPRESENTATION OF CRIMINAL HISTORY.**

Garcia contends that a criminal history category II over-represents his criminal history, and that his criminal history category should more appropriately be designated as category I.  Garcia's criminal history category is based on a variety of traffic citations stemming from a traffic stop on March 29, 2002 (one point) and domestic disturbance charges related to the December 18, 2004 incident, which Garcia represents is the same incident underlying his federal indictment (one point). Garcia argues that the point related to the traffic charges was earned because Garcia failed to appear at the time of the citations and that, had he addressed these citations in a timely fashion, he would not  be assessed a criminal history point.  With respect to the domestic disturbance charges, Garcia argues that, had his original lawyer in the matter addressed the federal charges before reaching a plea agreement in the state matter, he would not be assessed a criminal history point for those charges either.  At Garcia's sentencing, Garcia's counsel acknowledged that he did not have legal authority supporting his conclusion that these factors justified a variance, but contended that a variance was within the Court's equitable discretion.

The Court notes that, had Garcia addressed his 2002 traffic citations in a timely manner, he likely would not have picked up criminal history points from these charges.  The Court also acknowledges that, while the domestic disturbance charges brought against Garcia in state court are very serious, the actual crime was pled to three misdemeanors: (i) evading/obstructing an officer;

(ii) resisting/evading/obstructing an officer; and (iii) possession of one ounce or less of marijuana. Taken in totality, the Court finds that these factors justify a variance in Garcia's criminal history and will apply a criminal history category of I.

## II.   **DEPARTURE PURSUANT TO U.S.S.G. § 5K2.23.**

Garcia argues that, pursuant to sections 5G1.3 and 5K2.23 of the Guidelines, his federal sentence should be reduced by the 240 days he has already spent in state custody.  Garcia contends that, because one of the state charges he faced was possession of a stolen firearm, the charge was sufficiently related to his federal charges and therefore the time he served in the state system should be credited against his federal sentence.  The Court is not convinced by Garcia's argument.

Section 5K2.23 authorizes a downward departure if a defendant has completed a prison term and the requirements of section 5G1.3(b) are met.  The United States does not dispute that Garcia has completed a prison term in the state system.  At the sentencing hearing, however, the United States argued that Garcia can not satisfy the requirements of U.S.S.G. § 5G1.3(b).

To come under the auspices of section 5G1.3(b), a defendant's earlier imprisonment must have been for conduct relevant to the federal offense with which he is charged, and that conduct must be the basis for an increase in sentencing level with respect to the federal offense.  Garcia has not satisfied either of these requirements.

Although Garcia originally faced state charges for possession of a stolen firearm, he was not convicted on that charge.  Rather, he pled guilty to three misdemeanors: (i) evading/obstructing an officer; (ii) resisting/evading/obstructing an officer; and (iii) possession of one ounce or less of marijuana.  Accordingly, the Court believes that any time Garcia served was for those crimes and not for an offense related to firearm possession.  Even if the conduct could be considered relevant,

however, Garcia has not presented any evidence that the offense level that has been calculated by probation is increased as a result of his state imprisonment.  Because Garcia fails to meet either requirement inherent in U.S.S.G. § 5G1.3(b), the Court does not believe a downward departure is authorized.

Nevertheless, even if a downward departure were authorized, the Court would not depart. After adjusting his criminal history category, the Court does not see how Garcia differs from other defendants with an offense level of seventeen.  Garcia still has serious misdemeanor convictions and the original state charges are troubling.  In any case, the Court chooses not to depart because it is not convinced that a departure is warranted under the facts and circumstances here.  This Court, and other federal courts, see very similarly situated defendants.  The Court cannot fairly distinguish Garcia's case from many others.  This case fits into the heartland of cases.  Accordingly, even if a departure were authorized under the facts of this case, the Court would exercise its discretion not to depart because the case remains in the heartland of cases that the federal courts face.

## III.   THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE OFFENDER.

The Court has carefully considered the factors that Garcia advances.  While the factors under 18 U.S.C. § 3553(a) do not all point in one direction, they do counsel for some incarceration.  Taking Garcia's circumstances as a whole, the Court believes a sentence at the low end of the Guidelines' range is most appropriate.

### A.  NATURE AND CIRCUMSTANCES OF OFFENSE.

Among the most important factors that the Court must consider is the nature and character of Garcia's offense.  The Court does not believe that it has great latitude tp decide that possession

of an unregistered firearm is not a very serious offense.   Congress, as the elected branch of government, has decided that the crimes with which Garcia is charged are very serious offenses. Policy decisions are best left with the legislative branch.  It is not the Court's prerogative to question Congress' policy conclusions, irrespective whether the Court believes the offense should be punished at a particular level.

## B.  GARCIA'S HISTORY AND CHARACTERISTICS.

The Court commends Garcia for the tremendous personal progress he has made since being released from state custody.  The Court has considered Garcia's own statements of contrition, and acknowledges the value and importance of the statements made by esteemed members of the community who have addressed the Court on Garcia's behalf.  The Court is also sensitive to Garcia's contention that additional incarceration will severely impact his grandfather's life.

Separating family members is among the most difficult tasks that the Court faces. Nevertheless, the Court does not believe that any impact additional imprisonment may have on Garcia's family overrides Congress' assessment of Garcia's crime as very serious.  Nor does the Court believe that Garcia's situation is particularly unusual.  All families that have a loved one incarcerated bear a heavy burden, and thus, while the Court has considered Garcia's family circumstances, it does not believe that any impact his incarceration will have on them is adequate reason to deviate from the Guidelines.  The Court must remain cognizant to the purpose of the Guidelines– uniformity in sentencing among individuals who commit similar crimes.  Moreover, the Court believes that this period of confinement will provide Garcia with needed training and support that will assist him overcome the problems that remain in his life.

**IV.    THE NEED FOR THE SENTENCE IMPOSED TO PROMOTE CERTAIN STATUTORY OBJECTIVES.**

The statute requires the Court to find a sentence that, among other things, (i) reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense; (ii) affords adequate deterrence to criminal conduct; (iii) protects the public from further crimes of the defendant; and (iv) provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Garcia contends that a sentence of probation satisfies these factors. Garcia contends that such a sentence would be sufficient, but not greater than necessary, to comply with these statutory purposes. Garcia argues that a term of probation is particularly appropriate given the nature and circumstances of his offense, given his history and characteristics, and given the fact that, after he committed this offense, he was incarcerated for 240 days.

**A.    THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE.**

Garcia argues that a sentence of probation will show the public that the offense he committed is a serious offense and provides just punishment for the offense. Garcia argues that, given the nature and circumstances of the offense, Garcia's particular history and characteristics, and the fact that after he committed the offense, he was incarcerated for 240 days, such a sentence will also promote respect for the law.

The Court disagrees. The Court believes that probation does not fully reflect the seriousness of the offense in this case, does not as fully promote respect for the law as does incarceration, and,

-14-

given the total circumstances of the case, does not provide just punishment for the offense.  The Court believes some incarceration is appropriate.

**B.    THE NEED FOR THE SENTENCE TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT.**

Garcia contends that the pretrial incarceration of 240 days before his release and the third-party custody restrictions coupled with a term of probation will afford adequate deterrence to the criminal conduct of others.  Garcia argues that given his incarceration of 240 days, a sentence of probation serves as a significant deterrence to any future criminal conduct on his part, or on the part of others.

The Court again disagrees.  The Court is pleased with the promising changes it sees in Garcia.  Garcia is not, however, without a criminal history.  The Court believes that some incarceration is appropriate to assure that Garcia and others do not commit similar crimes.

**C.    THE NEED FOR THE SENTENCE TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT.**

Garcia contends that he has already demonstrated that it is unlikely that he will ever commit another crime.  Garcia argues that the 240 days of pretrial incarceration, followed by approximately nine months of exceptional conduct while released to Pearson's third-party custody and with Pre-Trial Services' supervision, should give the Court confidence that a period of probation will protect the public from further crimes by him.  Again, while the Court is encouraged by Garcia's progress, his crime deserves incarceration and not merely probation.

**D.    THE NEED FOR THE SENTENCE TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER.**

Garcia has rapidly advanced in his employment at Plumb Mechanical.  Garcia contends that

the most effective way for him to continue learning the profession is to continue his on-the-job training.  He maintains that the experience he gains is invaluable in his pursuit to some day obtain his license.  Garcia argues that his conduct under Pre-Trial Services' supervision demonstrates that he is amenable to correctional treatment in a supervised probation mode.

The Bureau of Prisons can and should provide Garcia with its 500 hour drug and alcohol treatment program.  Combined with similar counseling in supervised release, the Court is confident that the sentence will punish Garcia for his crime and provide him with the counseling he needs. While educational or vocational opportunity is an important sentencing factor, the Court believes that the factors which support incarceration outweigh the need to continue Garcia in his current job.

In sum, the Court acknowledges each of Garcia's arguments and the factors enumerated in 18 U.S.C. § 3553(a), including the United States Sentencing Guidelines.  The Court believes that Garcia's criminal history is over-represented by his PSR and will adjust Garcia's history to reflect a category of I.  While the Court has carefully considered each of the arguments that Garcia raises, and is sensitive to the positive changes he is attempting to make in his life, it believes that, after the adjustment in criminal history, the resulting Guidelines sentence is appropriate.

**IT IS ORDERED** that the Defendant David Garcia is committed to the custody of the Bureau of Prisons for a term of twenty-four months.  The Court recommends the defendant participate in the Bureau of Prisons' 500 hour drug and alcohol treatment program.  Garcia is placed on supervised  release for a term of three years and must comply with the following mandatory and standard conditions of supervised release: (i) he will submit to DNA collection; and (ii) he shall not possess, have under his control, or have access to any firearm, explosive device, or other dangerous weapons as defined by federal or local law.  The following special conditions will also be imposed

-16-

on Garcia: (i) he must participate in and successfully complete a substance abuse treatment program, which may include drug testing, outpatient counseling, or residential placements; (ii) he may be required to pay a portion of the cost of treatment and/or drug testing as determined by the probation office; (iii) he must refrain from the use and possession of alcohol or other forms of intoxicants; (iv) he must not frequent places where alcohol is the primary item for sale; and (v) he must submit to searches of his person, property, or automobile, and to ensure compliance, he must inform any co-residents that the premises may be subject to search.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney
David M. Walsh
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Robert R. Cooper
Albuquerque, New Mexico

      *Attorney for the Defendant*

-17-